UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

**JUL 05 2017**

**JEFFREY P. COLWELL**
**CLERK**

Hon. Peter J. Wirs on behalf of himself and :
all others athletic members of national :
wrestling federations; :
               Plaintiff, :

     v. :

United World Wrestling; :
               Defendant, :

CLASS ACTION

JURY TRIAL DEMANDED

UNDER SEAL

---

## COMPLAINT

### I. Introduction.

1.    This is a class action pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26 for acts in violation of Section 2 of the Clayton Act, 15 U.S.C. § 13, brought against Wrestling's international federation, United World Wrestling ("UWW") and its individual officers and directors who arbitrarily and capriciously banned all Veterans Division Class F and Class G wrestlers of age 60 and over ("Competitors age 60 and over") from future Veterans World Championships (the "Worlds") in violation of the Fourth, Sixth and Seventh Principles of Olympism and rules of the International Olympic Committee ("IOC") Charter ("Olympic Charter") and the UWW (Swiss) Articles of Association ("UWW Constitution"); because of the purported additional expense of providing such competition, which constitutes an injury for which the antitrust laws are meant to prevent. The UWW and its officers and directors violate the IOC Charter, UWW Constitution and both U.S. and Swiss law by undertaking invidious discrimination against the Competitors age 60 and over, constituting "output restriction," a decision which is substantially overbreadth, and denies Competitors' right of publicity, and is a breach of fiduciary duty, particularly when narrowly tailored options are at the UWW's disposal to further its legitimate interest of protecting competitors' health and welfare, and is out of proportion to the interest served.

-1-

## II. Jurisdiction and Venue.

2.   Jurisdiction is conferred on this Court by 28 U.S.C. § 1337.

3.   Venue is proper in this Court as Defendants' principal domestic agent, USA Wrestling is headquartered in Colorado Springs, CO and transacts business as the Defendant's agent collecting revenues due the Defendants, and accept applications on behalf of Defendant for Plaintiff and other Class Members to obtain licenses to compete in international events sanctioned by the Defendant, and hosts the Defendants' international competitions.

## III. Parties.

4.   Plaintiff is Hon. Peter J. Wirs, a 62 year old citizen of the United States and of the Commonwealth of Pennsylvania who is an amateur athletic pursuant to the U.S. Ted Stevens Olympic and Amateur Sports Act ("ASA"), 35 U.S.C. § 220501(b)(1) and among his civic undertakings, is the President of the Pennsylvania Wrestling Club, Inc. (the "Club"), a tax-exempt nonprofit Pennsylvania corporation, and an amateur sports organization, 35 U.S.C. § 220501(b)(3).  On April 17, 2014 Mr. Wirs became the oldest (at age 59) to have his first sanctioned bout, and on April 27, 2017 become the first American and first male to compete in a non-Paralympic championship despite being terminally ill with Mitochondrial Disease ("Mito"), and despite being injured in the aforementioned competition suffering a dislocated shoulder, returned to compete on May 20, 2017 to became the first person ever to win a non-Paralympic National Championship despite suffering Mito.

5.   Defendant United World Wrestling ("UWW") is on information and belief a Swiss nonprofit verein or association and is the IOC designated international federation under Article 25 of the IOC Charter serving as the worldwide governing body of the Sport, and is a Person for purposes of Section 8 of the Clayton Act. The UWW is governed by a 23 member Bureau (board of directors). Defendant's last known address is Rue du Château, 6, 1804, Corsier-sur-Vevey, District of Riviera-Pays-d'Enhaut, Canton of Vaud, Switzerland.

## CLASS ACTION

-2-

## CLASS ACTION ALLEGATIONS

6.   This action is brought by the Plaintiff as a class action, on his own behalf and on behalf of all others similarly situated, under the provisions of Rules 23(a) of the Federal Rules of Civil Procedure, for damages, injunctive and declaratory relief, and relief incident and subordinate to the preceding relief, including costs and attorneys' fees, and all such additional relief as may be just and appropriate.

7.   This class includes all persons and entities residing in the United States and multiple other nations that, from at least October 7, 2016, through the present that directly or indirectly purchase tickets to attend or subscriptions to view by streaming video or otherwise made a contribution from the Defendants for their own use and not for resale. Specifically excluded from this Class is the Defendant; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

8.   The classes so represented by the Plaintiff in this action, and of which Plaintiff himself is a member consists of all Competitors who are of age 60 and over, those competitors who will become of age 60 and over within a time certain, all other amateur wrestlers, and also the International Olympic Committee and its directors and officers, and all other international federations and their directors and officers and athletic competitors, and all broadcast and cable broadcasters who disseminate video of Olympic and international sporting competitions, and fans who directly or indirectly purchase tickets to attend or subscriptions to view by streaming video of international sporting competition for their own use and not for resale.

9.   The precise number of Class members is unknown to the Plaintiff because such information is in the exclusive control of the Defendant. However, due to the nature of the trade and

commerce involved, the Plaintiff is informed and believes, and thereon alleges, that there are at least hundreds of thousands geographically dispersed throughout the United States and throughout the world, such that joinder of all Class members is impracticable.

10. The Plaintiff reserves the right to expand, modify or alter any and all Class definitions in response to information learned during discovery.

11. There are common questions of law and fact involved in this action that affect the rights of each member of the class and the relief sought is common to the entire class, namely by the Defendants' wrongful conduct in violation of the antitrust laws by promoting invidious discrimination and by breach of care and loyalty failing to promote the Sport, all in violation of the Olympic Charter, the UWW Constitution, the Swiss Civil Code the Clayton Act, and other applicable Federal and state law.

12. The claims of the Plaintiff, who is representatives of the class, are typical of the claims of the class, in that the claims of all members of the class, including the Plaintiff, depend on a showing of the acts of omissions of the Defendant giving rise to the right of the Plaintiff to the relief sought. There is no conflict as between the Plaintiff and other members of the class with respect to this action, or with respect to the claims for relief set forth in this complaint.

13. The named Plaintiff is the representative parties for the class, and are able to, and will, fairly and adequately protect the interests of the class. The attorneys for the Plaintiff are experienced and capable in litigation in the field of intellectual property, sports law and similar fields and have successfully represented claimants in other litigation of this nature.

14. This action is properly maintained as a class action inasmuch as the questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

15. In support of the allegations set forth above in paragraph 10, Plaintiffs show as follows:

## IV. FACTS

-4-

16.   Wrestling, one of the two human instinctual sports (running being the other), is a full body contact, combative sport, It is the only sport which is 100% aerobic and anaerobic, and which requires absolute control of the basic human biological and psychological response commonly known as "flight or fight" syndrome. The Sport is governed by a vertical managerial hierarchy.

17.   The touchstone of Wrestling is competitor compatibility, combatants being in the same age, gender and weight category.

18.   More so than in other sports, Wrestling participants are divided over female participation in what traditionalists regard as a masculine-affirming sport, despite history demonstrating women have wrestled since antiquity. Traditionalists seek to impose male hegemony while Progressives embrace female participation. The controversy regarding male hegemony is more acute in Wrestling, more than all other sports, possesses inherent erotic aesthetics, is more susceptible to sexualization, particularly by uninformed spectators who mistaken as homoerotic stimuli, the manifestation of the sympathetic nervous system responses which readily apparent due to wrestlers necessity of wearing skin-tight competitive garments to avoid injury.

19.   The UWW is the IOC recognized international federation governing Wrestling. It is governed by its organic law, the UWW Constitution in addition to all requirements imposed by the IOC Charter and the Swiss Civil Code of 1907.

20.   Under the Fourth Fundamental Principle of Olympism, the IOC Charter provides that "[t]he practice of sport is a human right. Every individual must have the possibility of practising sport, without discrimination of any kind and in the Olympic spirit * * * and under the Sixth Principle "the rights and freedoms set forth in this Olympic Charter shall be secured without discrimination of any kind, such as race, colour, sex, sexual orientation, language, religion, political or other opinion, national or social origin, property, birth or other status."

21.   The UWW's governing body representing its membership is the Congress and its managerial

body is the UWW Bureau (board of directors). Membership appears to be limited to national federations (known under the ASA as national governing bodies or NGBs) who represent all competitors, coaches, officials and fans.

22. As the international federation, the UWW exclusively administers and licenses all competitors to practice Wrestling all international championships and World Cups. The UWW authorizes each national federation to host national championships which qualify competitors to compete in the international championships, the Veterans Division (competitors age 35 and over) being the sole exception, by allowing open eligibility.

23. While the UWW is cash solvent, its balance sheet indicates the UWW is budget and service-delivery insolvent, which according its audits, UWW suffered an operating deficit in 2015 of approximately of CHF 2,848,000 and in 2014 CHF 1,881,000.[1] Funds on hand at year end 2015 was CHF 29,840,000 down from 2014 CHF 32,688,000. Unlike its comparable IFs most notably the International Association of Athletics Federations (IAAF) (track & field). UWW's CHF 1,508,000 sponsorship revenue is less than its' CHF 1,578,000 competitor licensing fees and CHF 1,343,000 championship host city licensing fees. UWW's sponsorship revenue as a share of total revenue is half that of the Olympic Movement generally (on average 45%) and its broadcast rights revenue is only 3% of its total income, when it appears it should be 47% of its total income.

24. While Wrestling is regarded as the world's largest participatory non-team sport, the United States is the only nation which Wrestling is significantly declining evident that:

   (1) Two of the three directives of the January 1977 President's Commission on Olympic Sports (at pp. 265-266) remain unfulfilled.

   (2) More than 699 U.S. collegiate wrestling programs have been abolished since 2002, leaving only 350 collegiate wrestling programs for men and 27 for women, as compared to 1,983 collegiate basketball programs for men and 1,948 for women as

---

[1] Current Swiss CHF and US $ exchange rates is relatively equal.

1    of 2015, the last year comparable statistics are available.

2        (3)    The National Collegiate Athletes Association ("NCAA") and 41 state scholastic

3            sports organizations refuse to recognize or sanction female Wrestling, in violation

4            of the Patsy Mink Equal Opportunity in Education Act, Pub. L. 92-318, 86 Stat. 235,

5            20 U.S.C. §§ 1681-1688, commonly referred to as "Title IX" despite the availability

6            of existing resources and comparable low costs associated with the Sport.

7    25.    Wrestling is the only sport whose intellectual property rights in the U.S. market are

8    continuously stigmatized by vaudeville promotions, most prominently a publicly registered

9    U.S. corporation, World Wrestling Entertainment, Inc. ("WWE"), which is the cause of

10   decline in TV audience of the Sport during the Olympic Game, moving the IOC Executive

11   Board on February 12, 2013 voted to expel Wrestling from all Summer Olympic Games.

12   26.    The IOC General Assembly (Session) reversed the IOC Executive Board's decision in part,

13   by placing Wrestling and the UWW on probation until the 2024 Olympic Games, when

14   Wrestling will have to apply for readmission for future Olympic Games, despite the

15   historical fact that Wrestling has been a "Core" sport of both the ancient and modern

16   Olympic Games.

17   27.    Compared to the only other instinctual Olympic Sport, Track & Field (represented by the

18   IAAF):

19       (1)    Wrestling's sale of 2012 (London) Olympic tickets is 7.44% of Track & Field's

20           Olympic tickets.

21       (2)    Wrestling's 2012 Olympic media coverage (number of articles written) is 9.96% of

22           Track& Field's media coverage.

23       (3)    Wrestling's 2012 Olympic maximum TV audience is 30.0% of Track & Field's

24           maximum TV audience.

25   28.    Although the IOC data on the 2016 Rio Summer Olympic Games has not been published,

26   the ongoing stigmatization of Wrestling's intellectual property rights in the U.S. market by

27

28

vaudeville promotions, the U.S. national news media (as measured by average by *The New York Times*):

    (1)    Failed to provide any coverage of USA's Helen Maroulis who became the first American woman to win Olympic Gold at the 2016 Games defeating the most decorated female wrestler, Japan's Saori Yoshida.

    (2)    Failed to provide any coverage of Japan's Kaori Icho who became first female in any sport to win individual-event gold at four consecutive Olympics (2004, 2008, 2012 and 2016) and who is also ten-time world champion.

    (3)    Failed to provide any coverage Veteran Division wrestlers such as Steve Catarino who despite suffering substantial injury continues to compete, or of Wirs becoming the first American and the first male to compete in any non-Paralympic national championship, and thereafter the first non-Paralympic national champion despite being terminally ill with Mito.

29.    On or about September 26, 2016, DUSSON committed an *ultra vires* act by arbitrarily barring Wirs from competing in the 2016 Worlds, notwithstanding the UWW's medical commission holding that it could not prevent Wirs from competing due to his terminal illness, and notwithstanding recognition of the historical significance of Wirs' competition by Pope Francis in an October 4, 2017 communications.

30.    On or about December 27, 2016, the UWW disclosed at a previously held Bureau meeting on a date undisclosed, the UWW Bureau altered its rules and barred all Competitors from competing in the Worlds by eliminating the Veterans Division's Class F and Class G, without notice or opportunity to be heard by stakeholders or disclosure of any minutes, vote, or any record, or any evidence of considering readily available narrowly drawn options such as heightening physical examinations and verification of strength conditioning and competitive skills.

31.    The UWW has judicially admitted in its answer to the appeal filed by Wirs and the Club

before the International Court for Arbitration of Sport ("CAS") docketed at CAS 2017/A/5097, that it has eliminated Class F and Class G that in addition to be concerned about Competitors' health, the primary reason was the cost-effectiveness of hosting competition for a reputedly but unproven contention of declining Competitor participation, despite authorizing national federations to continue to allow Competitors age 60 and over in national championships.

32.   On information and belief the UWW did not obtain IOC Executive Board approval of the rule change barring competitors age 60 and over as required by IOC Charter Rule 40 and Rule 42.

33.   The sanction for an International Federation violating the IOC Charter is withdrawal of the Sport and recognition by the IOC General Assembly (Session) upon recommendation by the IOC Executive Board under IOC Charter Rule 59.1.2.

34.   In a March 29, 2007 correspondence to a Competitor, in an April 10, 2017 phone call with Plaintiff, and subsequently in legal papers filed April 26, 2017 with CAS, the UWW admits and concedes its primary motivation is economic considerations, specifically anticipation that liability insurance rates will increase so substantially that no city for apply to the host the Worlds, and the reputed assertion (without proof) that a declining number of Competitors does not make hosting Class F and Class competition at the Worlds cost efficient.

35.   Plaintiff exhausted all his available internal remedies by first filing a grievance through the UWW internal dispute resolution process, which was arbitrarily denied without any action, then an appeal to CAS which on April 26, 2017, CAS ruled it lacked jurisdiction.

### Count No. 1: Violation of Section 2 of the Clayton Act.

36.   Plaintiffs reallege and reiterates Paragraphs 1 through 38 as if fully stated herein.

37.   As a direct and proximate result of the Defendant's acts alleged above, all Competitors age 60 and over have and will continue to be denied the opportunity to practice their sport in international competition and not participate in or obtain the benefits of the Olympic

Movement, such as competition and comradery among fellow competitors from multiple nations and cultures, and otherwise has and will continue to suffer immediate and irreparable injury. Therefore under Section 16 of the Clayton Act, 15 U.S.C. § 15(a), Plaintiffs are entitled to recover from the Defendant, jointly and severally, threefold such damages sustained as well as any future damages and the cost of suit, including reasonable attorney's fees.

38.   UWW is prohibited to undertake invidious discrimination against Competitors by the Fourth, Sixth and Seventh Principles of Olympism of the IOC Charter which guarantees every athlete the right to practice his sport without discrimination, as the Class' right to practice their sport, the outright prohibition substantially burdens Competitors more than which is necessary to further the UWW's legitimate interest, if any, of protecting Competitors' health and safety, which could easily be satisfied by increasing pre-competition medical and strength conditioning examination to assure Competitors are physically fit to compete.

39.   Plaintiff and all Competitors desire to and have the right under the IOC Charter to compete in all such future Worlds for as long as their health and physical conditioning permits them to compete, whereas Defendants have at their disposal more narrowly drawn options that would satisfy concerns regarding competitors' health and safety, specifically by increasing pre-competition medical and strength conditioning examination to assure Competitors are physically fit to compete.

40.   Willfully prohibiting Competitors otherwise qualified to practice wrestling from all future Worlds because of economic considerations and factors constitutes restraint of commerce which are the direct causation of the Competitors' injuries, such harm is not speculative in that it denies, dilutes, and diminishes the opportunity for wrestlers to compete, or for fans to view competition in person or by television or other digital platforms, or for fans to otherwise support Wrestling, and moreover such restraint of commerce discourages, hinders or threatens to harm general public support, corporate sponsorship underwriting, and

membership dues for Wrestling due that its invidious discrimination in restraint of trade violates the Olympic Charter and the UWW Constitution may or will drive away support for the Sport; therefore Plaintiff has anti-trust standing to bring this action and the Class is entitled to treble damages and injunctive relief.

41. Willfully prohibiting Competitors otherwise qualified to practice wrestling from all future Worlds because of economic considerations and factors injures not only the Competitors, but the Sport, by:

    (1) Denying fans competitive matches that demonstrate the breath of accessibility to practice the Sport, evident Competitors are of age 60 and over,

    (2) Discourages younger wrestlers from remaining in the Sport due to age discrimination,

    (3) Discourages specific demographic segment of fan base which by reason of age is affluent from supporting the Sport due to elimination of their peers from competition,

    (4) Is repugnant to the Olympic Movement as persons of all ages are entitled to practice sport, and further lowers the Sport's esteem in the eyes of the IOC and the Olympic Movement,

    (5) Casts significant and substantial doubt on the UWW's managerial and financial capability to plan and execute its obligations under the IOC Charter, thereby accelerating the risk of the Sport being eliminated from future Summer Games

Therefore Plaintiff has anti-trust standing to bring this action and the Class is entitled to treble damages and injunctive relief.

42. Because Defendant's acts as alleged herein are willful within the meaning of the Clayton Act, the award of actual damages should be trebled pursuant to 15 U.S.C. § 15(a).

43. The Defendant's acts as alleged herein have caused, and unless restrained and enjoined by this Court, will continue to cause irreparable harm, loss, and injury not only to the Class but to Wrestling and to the Olympic Movement, and the Plaintiff has no other adequate remedy

1    at law.

2    44.    Plaintiff is entitled to recover his attorneys' fees and costs of suit pursuant to 15 U.S.C. §

3           15(a).

4                    **Count No. 2: Violation of Section 43(a)(1)(B) of the Lanham Act.**

5    45.    Plaintiffs reallege and reiterates Paragraphs 1 through 47 as if fully stated herein.

6    46.    Defendant's commercial advertising, marketing and promotion of their representation that

7           it has the managerial and financial capability to plan and execute its obligations and

8           otherwise are in full compliance with the IOC Charter and the UWW Constitution which

9           requires it to "to encourage the development of all wrestling styles and to promote the sport

10          in all countries of the world" and "to represent the sport of wrestling and to protect its

11          interests within the Olympic Movement, in particular at the International Olympic

12          Committee (hereafter the "IOC") and other relevant sports associations or organizations; and

13          "to arbitrate and take all necessary decisions, measures and sanctions in all cases of litigation

14          or disputes which may arise as a consequence of any breach of the Federation statutes or

15          regulations" and "to fight against any kind of political, racial and religious discrimination,"

16          knowingly and willfully constitute materially false statements that misrepresent the nature,

17          characteristics and qualities of the Defendants' efforts, all in violation of Section 43(a)(1)(B)

18          of the Lanham Act, 15 U.S.C. §1125(a)(1)(B).

19   47.    Defendant willfully and wantonly enter its commercial advertising, marketing and promotion

20          of its representations it has the managerial and financial capability to plan and execute its

21          obligations and otherwise are in full compliance with the IOC Charter and the UWW

22          Constitution into interstate commerce by U.S. mail, wire and travel.

23   48.    Defendants' willful and wanton acts and omission of acts of deceptive and false advertising,

24          marketing and promotion of its representations it has the managerial and financial capability

25          to plan and execute its obligations and otherwise are in full compliance with the IOC Charter

26          and the UWW Constitution, disparages, impugns, and stigmatizes not only the Class but all

27

28                                                 -12-

citizens of the United States and foreign nations, who desire to compete, participate, support or watch the sport of Wrestling and otherwise support the Olympic Movement and amateur athletics, male and female, desiring to exercise their right are provided by an Act of Congress under interstate commerce of the opportunity to compete in international athletic competition, and because of such disparagement, impugnment, and stigmatization, damages and diminishes the sport of Wrestling's goodwill and reputation, discourages and drives away the general public's attendance, participation and support, all which is necessary to obtain corporate sponsorship and financial underwriting of amateur athletics, and moreover injures the United States of America in being unable to obtain the most competent competitive representation in Wrestling as required by the ASA, all in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. §1125(a)(1)(B).

49.   The Defendant's acts as alleged herein have caused, and will continue to cause, damage to the thepublic's support of the Sport and amateur athletics opportunity to compete in international, scholastic or collegiate competition in an amount to be determined at trial.

50.   Because Defendant's acts as alleged herein are willful within the meaning of the Lanham Act, the award of actual damages should be trebled pursuant to 15 U.S.C. § 1117(b).

51.   The Defendant's acts as alleged herein have caused, and unless restrained and enjoined by this Court, will continue to cause irreparable harm, loss, and injury not only to the Class but to Wrestling and to the Olympic Movement, and the Plaintiff has no other adequate remedy at law.

52.   Plaintiff is entitled to recover his attorneys' fees and costs of suit pursuant to 15 U.S.C. § 1117.

**Count No. 3: Misappropriation of Competitors' Right of Publicity.**

53.   Plaintiffs reallege and reiterates Paragraphs 1 through 55 as if fully stated herein.

54.   Each wrestler when competing in any of the UWW sanctioned events is entitled to the benefits of his labor. Amateur athletes in particular, are significantly dependent on obtaining

earned media (press coverage) which in turn builds fan support and recognition for personal sponsorship opportunities.

55. Defendant, without permission, has used some aspect of identity or persona in such a way that each competitor is identifiable from Defendant's use. The Defendant has permission to promote each competitor's participation.

56. However the Defendant does not have permission or otherwise obtained consent to conceal and not promote each competitor's participation.

57. The UWW is required by the UWW Constitution, Article 2(a) to promote the Sport which means both print, broadcast and digital media.

58. The Class has a reasonable expectation that upon competing in the Sport, the Defendant will discharge its fiduciary duty of care and of loyalty to adequately promote the Class's persona to the benefit of each Class Member to obtain public acclamation and recognition, and otherwise enjoy the benefits of their labor.

59. It is a maxim, particularly in amateur sports that if the media does not report an sporting event "it didn't occur."

60. Press coverage of sporting events builds fan recognition and support, which in turn attracts corporate sponsorships which revenue is essential to maintain amateur sports.

61. Reliance on corporate sponsorships is the primary means of supporting amateur athletics in the U.S, as specifically mandated by the Amateur Sports Act.

62. Multiple digital platforms of the Defendant and each of its affiliate members is meaningless if the general public is not aware of their existence or otherwise have sufficient interest to access these digital platforms.

63. Defendant at all times knows, or if it does not know, should have known that the primary impediment to obtaining U.S. media coverage is the ongoing undesirable, unwholesome and unsavory mental association ("dilution by tarnishment") inflicted by a U.S. vaudeville production company (WWE, Inc., Stamford, CT) in violation of Section 43(a)(1)(B) and

-14-

1    Section 43 (c) of the Lanham Act, 15 U.S.C. §§ 1125(a)(1)(B), (c)(2)(C) and (c)(3), as

2    amended by the Trademark Dilution Revision Act of 2006, ("TDRA") 109 P.L. 312, 120 Stat

3    1730, Section 110 of the Ted Stevens Olympic and Amateur Sports Act ("ASA"), Pub. L.

4    105–225, 112 Stat. 1466, as amended, 36 U.S.C. § 220506, and multiple state "Unfair Trade

5    Practices and Consumer Protection" and trademark protection laws.

6  64.    Defendant's lack of use has and will continue to cause damage to the commercial value of

7    each competitor's persona, denying their media and public acclamation and potential

8    corporate sponsorships.

9    **Count No. 4: Breach of Fiduciary Duties.**

10 65.    Plaintiffs reallege and reiterates Paragraphs 1 through 68 as if fully stated herein.

11 66.    Each of the individual Defendants have a fiduciary relationship to the UWW, the Sport and

12    the Class as each Defendant is entrusted to act for the benefit of or in the interests of the

13    Sport and the Class and are possessed under the Swiss Civil Code of 1907 with the legal

14    authority to do so, including the duty to abide by the Olympic Charter to guarantee all

15    members of the Class the right to practice their sport and obtain the benefits of their labor.

16 67.    Each of the individual Defendants have failed their duty to act in good faith and with such

17    care as an ordinarily prudent person in a like position would use under similar

18    circumstances, with DUSSON in particular having a personal interest, direct or indirect, in

19    the subject of the business decision to avoid any personal liability for expelling Mr. Wirs

20    from the October 7, 2016 Veterans World Championship and each defendant failing to

21    exercise independent judgment, or otherwise be reasonably informed with respect to

22    undertaking invidious discrimination against Competitors age 60 and failing to use material

23    information reasonably available under the circumstances such as readily available narrowly

24    drawn options; and therefore cannot reasonably possess any belief that the business decision

25    to undertake invidious discrimination against Competitors age 60 and over was in the best

26    interests of the UWW in light of its purposes to protect and promote the Sport in compliance

27

28                                              -15-

with the IOC Charter.

WHEREFORE, Plaintiff prays for relief as follows:

## I. Declaratory Judgment.

1. That the Court enter a declaratory judgment that Defendant, as a result of its willful, deliberate invidious discrimination against the Class by banning Class F and Class G of the Veterans Division is in violation of the Olympic Charter's extension of rights to all persons to practice their sport and constitutes overbreadth by substantially burdening the Class more than is necessary, particularly when narrowly tailored options are at the Defendant's disposal to further its legitimate interest of protecting competitors' health and welfare, and is out of proportion to the interest served.

2. That the Court enter a declaratory judgment that Defendant, as a result of its willful, deliberate, and materially false statements misrepresents the nature, characteristics, and qualities of the Defendant's representations it has the managerial and financial capability to plan and execute its obligations and otherwise are in full compliance with the IOC Charter and the UWW Constitution.

## II. Certification of Class.

3. A declaration that this action is a plaintiff class action properly maintained pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) and the Court certify this action as a Class Action.

4. That the rights of the Class Members to relief as sought herein be adjudicated and declared.

5. The Court authorize notice of this Class Action be made to the Attorney General of each of the Several States on behalf of all class members within the respective state, and on the equivalent judicial officer of each respective nation or its embassy or consulate on behalf of all class members in each of the respective foreign nations and states.

## III. Minimal Bond for Plaintiffs.

6. The Court require the Plaintiffs collectively post bond of One Dollar and No Cents ($1.00)

under Fed.R.Civ.P. 65(c) because this case is in the public interest and any material expense incurred by the Defendant to comply with the law by ceasing and desisting their invidious discrimination and false commercial advertising and promotion is a material expense that would in any respect be required upon final judgment, given the extraordinary high probability of the Plaintiff prevailing on the merits as there is no genuine dispute of the material facts and the Plaintiff is entitled to prevail as a matter of law.

### IV. Pre-Judgment Security Pursuant to Fed.R.Civ.P. 64.

7.      Pursuant to Fed.R.Civ.P 64(a), as authorized pursuant to Colorado C.R.C.P Rule 103, § 5, the Court enter a writ pursuant to C.R.C.P. 102 attaching all of each Defendants's real and personal property pending final judgment herein or further proceedings under C.R.C.P. 102.

### V. Applicability.

8.      That the Court's judgment ("Final Judgment and Remedial Order") applies to the Defendant, and to each of their current and future directors, officers, agents, attorneys, employees, independent contractors, servants, subsidiaries, and all assigns and successors; and also apply to those persons in active concert or participation with the Defendant and their current and future directors, officers, agents, attorneys, employees, independent contractors, servants, subsidiaries, and all assigns and successors who have received actual notice of the Court's Final Judgment and Remedial Order by personal service or otherwise (hereinafter "Covered Persons and Entities").

### VI. Specific Remedial Orders.

### A. General Injunctive Relief.

9.      That this Court issue a temporary restraining order, and thereafter a preliminary and permanent injunction pursuant to the Clayton Act, 15 U.S.C. § 26 that the Defendants, their agents, attorneys, employees, officers and all persons in privity with the Defendants, are furthermore and forever prohibited from any form of invidious discrimination against any athletic competitor solely on the basis of age, if the competitor is otherwise competent to

practice his or her sport by satisfying generally accepted medical standards regarding health and strength conditioning appropriate and proper for competitor to practice his or her sport.

### B. Affirmative Relief.

10. That pursuant to Rule 66, Federal Rules of Civil Procedure, this Court appoint one representative nominated by the Plaintiff Class Representative and a representative nominated by the UWW President and Chief Executive Officer, both hereby

    (1)    Agreeing to waive any cause for disqualification if either representative so nominated is either party or otherwise associated with either party, and

    (2)    Representing and warrant each has authority to enter into settlement, specifically as to Class Representative Fed.R.Civ.P. 26(e) particularly as any settlement will not bind any member of the Class, and to the UWW President Article 14.2 of the UWW Constitution, and

Upon appointment, the two representatives shall agree as to a third representative to be appointed by the Court to constitute a board of Receivers on behalf of the Court and take immediate possession of all of the UWW's assets, liabilities and goodwill for the purpose of assuring the UWW obtain, possess and retain the managerial and financial capability to plan and execute its obligations and become and remain in full compliance with the IOC Charter, the UWW Constitution, the Swiss Civil Code of 1907 and all applicable Federal law.

11. The Receivers shall exercise all powers and duties as provided by order of the Court and such additional inherent power agreeable with the principles of equity which are reasonable and necessary to carry out their mandated responsibilities to restore the UWW to full compliance with the IOC Charter, the UWW Constitution, Swiss Civil Code of 1907 and all applicable Federal law, including but not limited to:

    (1)    Designate one among them as Chairman, appoint a secretary and treasurer, retain at the expense of the UWW such appropriate counsel and certified public accountants

-18-

or Swiss equivalent and other professionals, hire and fire employees and excise all other powers and duties delegated by the UWW Constitution under Article 12.4.

(2)     Shall be compensated by the UWW the sum equal to three quarters of the current compensation of a U.S. District Court judge and all reasonably incurred expenses for accommodations and travel.

(3)     Shall submit a Plan of Reorganization to the Court with all due dispatch for its approval after solicitation of public comment that:

(A)     Amends the UWW Constitution, Rules and Regulations to assure managerial and financial capability to plan and execute its obligations with full accountability and transparency for all stakeholders, provide gender equality, terminate all forms of discrimination, and restore and remain in full compliance with the IOC Charter, the UWW Constitution, the Swiss Civil Code of 1907 and all other applicable Federal law and otherwise guarantee the right of all persons to practice the Sport;

(B)     Seeks to obtain corporate sponsorship in a sum comparable to other major international federations of all world, continental, national and regional/provincial/state championships, cups and other dual meets between nations in a structured league competition which shall include such modification to competition to assure increased fan support and public appeal necessary to attract and retain corporate sponsorship;

(C)     Maintains a centralized database of all competitor records for a systematic ranking process by world, national and regional/provincial/state by age, gender and weigh classes; and

(D)     Seeks to obtain restoration of Wrestling as an Olympic Core Sport.

(4)     Protecting the Sport's intellectual property rights by:

(A)     Undertaking efforts to lobby the Congress to amend Section 110 of the Ted

Stevens Olympic and Amateur Sports Act, Pub. L. 105–225, 112 Stat. 1466, as amended, 36 U.S.C. § 220506, to extend to NGBs and when appropriate, International Federations, intellectual property rights and remedies already extended to the U.S. Olympic Committee; and

(B)     Undertaking litigation under Section 43(a)(1)(B) and Section 43 (c) of the Lanham Act, 15 U.S.C. §§ 1125(a)(1)(B), (c)(2)(C) and (c)(3), as amended by the Trademark Dilution Revision Act of 2006, 109 P.L. 312, 120 Stat 1730, Section 110 of the Ted Stevens Olympic and Amateur Sports Act, Pub. L. 105–225, 112 Stat. 1466, as amended, 36 U.S.C. § 220506, and the various state laws under or similar to the model Unfair Trade Practices and Consumer Protection Law, and other applicable state trademark protection laws against World Wrestling Entertainment, Inc. ("WWE") and other vaudeville promoters for creating an undesirable, unwholesome and unsavory mental association ("dilution by tarnishment") of their vaudeville productions with the Sport in violation of the Lanham Act and other applicable laws and obtain both injunctive relief to end such dilution by tarnishment and compensatory damages of not less than $970 million in a Lanham Act Damage Fund.

(C)     And such other additional undertakings as may be just and appropriate.

12.   The Receivers shall hold hearings, take testimony, admit exhibits and otherwise establish a record for preparation of the Plan of Reorganization and may issue subpoenas or other process to secure testimony of witnesses or production of documents.

13.   Upon execution of the Plan of Reorganization, the Receivers shall summon an Extraordinary Congress of the UWW for purposes of remanding and reverting control back to the UWW and its members, as constituted by any amendments to the UWW Constitution effectuated by the Plan of Reorganization.

**Additional Relief.**

14.     That the Court award Plaintiff reasonable attorney's fees and legal costs in the sum to be established to be payable by the Defendant or upon appointment by the Receivers, by the Receivers.

15.     That the Court provide such additional relief as is just and proper.

Dated: July 3, 2017

Respectfully, etc.

Hon. Peter J. Wirs
Trustee
Lincoln Charitable Trust
P.O. Box 1776
Philadelphia, PA 19105
717-584-1776
215-688-3600 (mobile)
Trustee@LincolnCharitable.org
PJWirs@PeterJWirs.com

**VERIFICATION**

I, Peter J. Wirs, do hereby declare under penalty of perjury that the foregoing is true and correct.

Dated: July 3, 2017

Respectfully, etc.

Hon. Peter J. Wirs
Trustee
Lincoln Charitable Trust
P.O. Box 1776
Philadelphia, PA 19105
717-584-1776
215-688-3600 (mobile)
Trustee@LincolnCharitable.org
PJWirs@PeterJWirs.com